IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Margaritaville Enterprises, LLC, a Delaware Limited Liability Company,<br><br>*Plaintiff,*<br><br>v.<br><br>The Individuals and Entities associated with the domains in **Exhibit A**.<br><br>*Defendants.* | 1:23-cv-08189<br>Judge Thomas M. Durkin<br>Magistrate Judge David Weisman<br>Random Assignment<br><br>**FILED UNDER SEAL** |

**MEMORANDUM OF LAW IN SUPPORT OF *EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER, ASSET RESTRAINING ORDER, EXPEDITED DISCOVERY ORDER AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION**

I. INTRODUCTION

Defendants are as-yet-unknown individuals and entities running a series of websites which are attempting to capitalize on the recent death of Jimmy Buffett for their own personal gain. Each website poses as an online clothing store with a fabricated brand identity. The real purpose of these websites is to capitalize on whatever is trending in social media to sell t-shirts, hats, and other items. For example, whitecloths.com, garodenia.com, facultyan.com, and cashmeretribe.com all have pages dedicated to the Maui wildfires. All of these websites have pages attempting to capitalize on the recent passing of Jimmy Buffett. In addition to being in colossally bad taste, these websites are counterfeiting and infringing Margaritaville's valuable federally-registered trademarks.

II. FACTUAL BACKGROUND

Jimmy Buffett was a beloved American singer-songwriter and businessman who regaled audiences for decades with songs about the faces and places he'd seen during his lifetime along the road less travelled. He was known for his tropical rock music which portrayed "island

1

escapism." He recorded countless records and his hit songs include: Margaritaville, It's Five O'Clock Somewhere, Come Monday, Fins, Cheeseburger in Paradise, Why Don't We Get Drunk, and Changes in Latitudes, Changes in Attitudes. Buffett has a devoted fan base known as "Parrotheads."

Buffett launched several business ventures that his brand and lifestyle, including Jimmy Buffett's Margaritaville, which manages and franchises the "Margaritaville" and "Air Margaritaville" restaurants. There are currently twenty-eight (28) Margaritaville locations worldwide, as well as seven (7) "Air Margaritaville" locations at airports. Each Margaritaville location, as well as the Margaritaville website hosted at margaritaville.com sells goods with Jimmy Buffett's name, as well as song titles and song lyrics from Buffett's hit songs, such as "Margaritaville," "It's Five O'Clock Somewhere," and "Fins Up." Exemplars of the types of products sold at Margaritaville are shown below and attached as Exhibit 1 to the Complaint:



2



Plaintiff and its predecessors-in-interest have used the MARGARITAVILLE, JIMMY BUFFETT'S, IT'S FIVE O'CLOCK SOMEWHERE and FINS UP trademarks for decades, both alone and in combination with other words and designs, including Jimmy Buffett's name, in connection with retail stores, online retail stores, and a wide array of merchandise in the nature of clothing, headwear, books, décor, beverage wear, and printed materials (the "Jimmy Buffett Marks"). Plaintiff owns federal trademark registrations for the MARGARITAVILLE, JIMMY BUFFETT'S, IT'S FIVE O'CLOCK SOMEWHERE and FINS UP marks, many of which have achieved incontestable status, including:

| Mark/Name | Reg. No. | Reg. Date | Relevant Goods/Services |
|---|---|---|---|
| IT'S FIVE O'CLOCK SOMEWHERE | 3939868 | April 5, 2011 | (Int'l Class: 25) Shirts, T-shirts |
| IT'S 5 O'CLOCK SOMEWHERE | 3942996 | April 12, 2011 | (Int'l Class: 21) Beverage glassware |
| IT'S FIVE O'CLOCK SOMEWHERE | 5311732 | October 17, 2017 | (Int'l Class: 21) Insulating sleeve holders for jars, bottles or cans |
| IT'S FIVE O'CLOCK SOMEWHERE | 4597391 | September 2, 2014 | Int'l Class: 16) Paper goods and printed matter, namely, stickers, decals |
| JIMMY BUFFETT'S | 2201541 | November 3, 1998 | (Int'l Class: 09) mouse pads, decorative magnets (Int'l Class: 21) beverageware, portable beverage coolers in the nature of drink can huggers and individual bottle coolers (Int'l Class: 24) towels, cloth novelty flags (Int'l Class: 25) headwear, T-shirts, (Int'l Class: 35) |

4

| Mark/Name | Reg. No. | Reg. Date | Relevant Goods/Services |
|---|---|---|---|
| | | | retail store services featuring a wide array of merchandise in the nature of novelty items, souvenirs, clothing, headwear, books, recordings, beverageware and printed materials; on-line ordering services via a global computer network, featuring a wide array of merchandise in the nature of novelty items, souvenirs, clothing, headwear, books, recordings, beverageware and printed materials |
| JIMMY BUFFETT'S MARGARITAVILLE | 3117265 | July 18, 2006 | (Int'l Class: 21) Foam drink holders; portable coolers; beverage glassware; mugs; bottles, sold empty, namely water bottles; salt shakers |
| JIMMY BUFFETT'S MARGARITAVILLE | 3192542 | January 2, 2007 | Int'l Class: 25 (Int'l Class: 25) Shirts, T-shirts, sweatshirts, tank tops, jackets, caps |
| JIMMY BUFFETT'S MARGARITAVILLE and Design | 3117269 | July 18, 2006 | (Int'l Class: 21) Beverage glassware, mugs, foam drink holders; portable coolers; bottles, sold empty, namely water bottles |
| JIMMY BUFFETT'S MARGARITAVILLE and Design | 3192551 | January 2, 2007 | (Int'l Class: 35) Retail stores, featuring a wide array of merchandise in the nature of novelty items, souvenirs, clothing, headwear, books, recordings, beverageware, and printed material |

5

| Mark/Name | Reg. No. | Reg. Date | Relevant Goods/Services |
|---|---|---|---|
| JIMMY BUFFETT'S MARGARITAVILLE and Design | 3192548 | January 2, 2007 | (Int'l Class: 25) Shirts, T-shirts, tank tops, sweat shirts, headwear |
| JIMMY BUFFETT'S MARGARITAVILLE | 3120801 | July 25, 2006 | (Int'l Class: 35) Retail stores, on-line stores and mail order catalogs featuring a wide array of merchandise in the nature of novelty items, souvenirs, clothing, headwear, books, recordings, beverageware, and printed materials |
| MARGARITAVILLE | 4415098 | October 8, 2013 | (Int'l Class: 09) Eyewear, sunglasses, cases for eyeglasses and sunglasses |
| MARGARITAVILLE | 4597426 | September 2, 2014 | (Int'l Class: 25) Men's, women's, children's clothing, namely, fleece pullovers, active wear, namely, jogging outfits; outer wear, namely, jackets, surf wear, loungewear, sleepwear, and infantwear; athletic apparel, namely, shirts, pants, shorts, jackets |
| MARGARITAVILLE | 4937851 | April 12, 2016 | (Int'l Class: 21) Insulating sleeve holders for jars, bottles or cans |
| FINS UP | 5313066 | October 17, 2017 | (Int'l Class: 25) Clothing, namely, shirts |
| FINS UP | 6086412 | June 23, 2020 | (Int'l Class: 25) Headwear; Shirts; Sweatshirts |

6

| Mark/Name | Reg. No. | Reg. Date | Relevant Goods/Services |
|---|---|---|---|
| FINS UP | 3765495 | March 23, 2010 | (Int'l Class: 25) shirts |

Jimmy Buffett passed away at 76 years old on September 1, 2023. His passing has been national news, with the State of Florida even ordering flags at half-staff in honor of Jimmy Buffett. But while Jimmy Buffett's fans honor his memory, Defendants have been using a network of websites they control to try and make a quick buck off of Jimmy Buffett's death.

In the days since Mr. Buffett passed, a series of websites have begun selling various unauthorized, counterfeit Jimmy Buffett items. While each of these website purports to be a different "brand" on its surface, those differences are only superficial. The websites are under common control. They share the same mail server IP address, they share the same design elements, they are selling the same products, and they even share same spelling and grammatical errors.

### III. THE COURT SHOULD GRANT PLAINTIFF'S *EX-PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION

#### a. Plaintiff is Entitled to a Temporary Restraining Order and Order to Show Cause for Preliminary Injunction Based on Defendants' Counterfeiting and Infringement of Plaintiff's Trademarks

Plaintiff seeks a temporary restraining order and preliminary injunction prohibiting Defendants from further infringing upon Plaintiff's federally registered trademarks. Injunctions are authorized in trademark cases. 15 U.S.C. § 1116(a). The standard for issuing a temporary restraining order is the same as for a preliminary injunction. *USA-Halal Chamber of Commerce, Inc. v. Best Choice Meats, Inc.*, 402 F. Supp. 3d 427, 433 (N.D. Ill. 2019).

To prevail, Plaintiff must demonstrate: (1) its case has "some likelihood of success on the merits," (2) it has "no adequate remedy at law," (3) "without relief it will suffer irreparable harm,"

7

and that "the balance of harms favors the moving party" in that "the harm to the nonmoving party or the public" is not "sufficiently weighty that the injunction [or TRO] should be denied." *Planned Parenthood of Ind. & Ky., Inc. v. Comm'r of Ind. State Dep't of Health*, 896 F.3d 809, 816 (7th Cir. 2018); *Ezell v. City of Chi.*, 651 F.3d 684, 694 (7th Cir. 2011); *Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001). Plaintiff is entitled to a rebuttable presumption of irreparable harm if it demonstrates a likelihood of success. 15 U.S.C. § 1116(a).

### i. Plaintiff is Likely to Succeed on the Merits of its Claims

To prevail on a claim for trademark infringement, Plaintiff must provide that: (1) Plaintiff has a legal, exclusive right to the mark; and (2) a likelihood of confusion between Plaintiff's mark and the mark utilized by Defendants. *Packman v. Chicago Tribune*, 267 F.3d. 628, 638 (7th Cir. 2001); *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 461 (7th Cir. 2000). Plaintiff is likely to prove each of these elements as to Defendants.

#### 1. Plaintiff Owns Legally Protectable Marks

Plaintiff's incontestable federal trademark registrations are are *prima facie* evidence of the validity of the trademarks Plaintiff seeks to protect, as well as Plaintiff's exclusive right to use the Jimmy Buffett Marks in commerce. *See* 15 U.S.C. § 1057(b). Further, each of the asserted marks is incontestable. Id. Consequently, Plaintiff is likely to prevail on this first element of its claims for trademark counterfeiting and infringement.

#### 2. Defendants' Products Are Likely to Cause Confusion or Mistake

In non-counterfeiting trademark infringement cases, the second prong of the infringement test is analyzed by reference to the seven likelihood of confusion factors. *Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 898 (7th Cir. 2001); *Helene Curtis Indus., Inc. v. Church & Dwight Co., Inc.*, 560 F.2d 1325, 1330 (7th Cir.1977). None of these factors are dispositive in isolation, and different factors carry different weights on a case-by-case basis depending on facts and circumstances. *Id.*

Courts have held that it is unnecessary to perform a step-by-step examination of each likelihood of confusion factor in cases involving counterfeits because counterfeit marks that are identical or substantially indistinguishable from a registered mark are presumed to create likelihood of confusion. 15 U.S.C. § 1127; *see also Ent. One UK Ltd. v. 2012Shiliang*, 384 F. Supp. 3d 941, 949 (N.D. Ill. 2019) ("a court presumes likelihood of confusion when a defendant has produced counterfeit goods in an attempt to capitalize on the popularity of another's product" *Coach, Inc. v. Chaos of Muncie*, 2012 WL 896420, at *3 (S.D.Ind., March 15, 2012) (where an infringer has clearly and intentionally used the precise trademark's likeness on the type of goods that the trademark holder sells, likelihood of confusion exists as a matter of law).

To recover on a federal counterfeiting claim, a plaintiff must prove that: (1) the mark is counterfeit, meaning a "spurious mark which is identical with, or substantially indistinguishable from, a registered mark", 15 U.S.C. § 1127, 15 U.S.C. § 1116(d)(1)(B)(i); (2) the mark is "registered with the U.S. Patent and Trademark Office's principal register for use on the same goods or services for which defendants use the mark", 15 U.S.C. § 1116(d) (1)(B); (3) defendants were not "authorized to use the mark at the time the goods or services were manufactured or produced, *id.*"; and (4) defendants "acted with knowledge and intent." *Id.* at § 1117(b); *see also Entertainment One UK Ltd. V. 2012Shiliang,* 384 F.Supp.3d 941, 949-50 (N.D. Ill. 2019).

Here, there is no dispute that Defendants are intentionally using counterfeit marks knowing they are counterfeit. Defendants are intentionally placing marks that are identical to or substantially indistinguishable from the Jimmy Buffett marks on a variety of merchandise:

9











On that basis alone, the Court can and should find that Defendants conduct constitutes counterfeiting, and Plaintiffs are highly likely to succeed on the confusion element. *See e.g. Coach, Inc. v. Chaos of Muncie*, 2012 WL 896420, at *3-*4 (analyzing the four elements that must be established to prove counterfeiting, and finding counterfeiting where (1) the marks that appeared on the defendant's products were substantially indistinguishable from the plaintiff's federally registered marks (2) the plaintiff demonstrated that their Marks were federally registered, (3) the defendant was not authorized by the plaintiff to manufacture, sell, offer for sale, import, or distribute products bearing the plaintiff's designs or marks nearly identical to the plaintiff's designs, and (4) the plaintiff demonstrated that defendant acted with knowledge and intent.)

### ii. Plaintiff Will be Irreparably Harmed Absent the Issuance of Injunctive Relief

In trademark infringement cases, a plaintiff that establishes a likelihood of success is entitled to a rebuttable presumption that it would be irreparably harmed if no preliminary injunction issued. 15 U.S.C. § 1116(a). Even without this presumption, the evidence of irreparable harm in this case is overwhelming, and Plaintiffs would continue to be irreparably harmed if Defendants were permitted to continue the counterfeiting activity. Plaintiff has no control over the quality of the products Defendants are selling; each time a consumer encounters' Defendants'

products thinking it to be one of Plaintiff's products, the consumer will associate any quality problems with Plaintiff. This is the very essence of irreparable harm. *James Burrough Ltd. V. Sign of Beefeater, Inc.*, 572 F.2d 574, 578 (7th Cir. 1978) (trademark infringement actions involve the right of the trademark owner to control the reputation of his product and the right of the consuming public to be free of confusion); *see also Robb Container Corp. v. Sho-Me Co.*, 566 F. Supp. 1143, 1154 (N.D. Ill. 1983) ("In cases involving trademark infringement, irreparable harm is readily found, since the victim is unable to control the nature and quality of the infringer's goods, and risks losing control of its reputation").

Moreover, failure to issue an *ex parte* temporary restraining order will cause Plaintiff to suffer immediate and irreparable injury. The websites at issue are all registered in China, and if Defendants have notice of this litigation or a restraining order from the Court, they will transfer their ill-gotten profits offshore and simply set their websites up at new domains, destroying files and evidence in the process. Destruction of evidence and transfer of funds will make it nearly impossible for Plaintiff hold Defendants accountable for their unlawful activity.

### iii. The Balance of Hardships Favors Plaintiff

The balance of hardships tips sharply in favor of Plaintiff. Plaintiff has demonstrated that the irreparable harm is substantial, plainly outweighing any potential harm to Defendants. Defendants' continued unauthorized use of counterfeit marks threatens Plaintiff's reputation and substantial goodwill.

Defendants, on the other hand, will suffer no legitimate harm if the proposed temporary restraining order is granted. Plaintiff's requested relief forbids only Defendants' use of the counterfeit Jimmy Buffett Marks – i.e., goods in which Defendants have no legitimate interest in the first place. Defendants are free to sell genuine goods in a way that does not infringe

Plaintiff's trademarks. Preventing Defendants from selling, offering for sale or distributing counterfeit products, however, cannot be a compelling hardship.

### iv. The Public Interest Is Best Served by Enjoining Defendants' Counterfeiting

The public interest is served by protecting a trademark holder's interest in its mark and by preventing consumer confusion. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 784, (1992) ("Trademark law protects the public by making consumers confident that they can identify brands they prefer and can purchase those brands without being confused or misled"). Defendants are currently deceiving consumers by holding themselves out as being affiliated with Plaintiff. Plaintiff does not know the full extent of Defendants' counterfeiting activity. Ceasing counterfeiting activity through injunctive relief not only protects Plaintiff's interest in its marks, but also protects the public from potentially being confused by Defendants.

In sum, Plaintiff has established all four factors necessary to prevail on its application for a temporary restraining order and order to show cause for a preliminary injunction. Plaintiff therefore respectfully requests that this Court grant Plaintiff's motion and set an order to show cause why a preliminary injunction should not issue.

## IV. PLAINTIFF IS ENTITLED TO AN ORDER RESTRAINING DEFENDANTS' ASSETS

It is beyond question that Plaintiff ultimately will be entitled to an equitable accounting of Defendants' profits from Defendants' counterfeit activity. 15 U.S.C. § 1117. Several circuits have noted that pursuant to the Lanham Act, a district court has the inherent authority to issue an order restraining a defendant's assets. *See, e.g., Johnson & Johnson v. Advanced Inventory Mgmt., Inc.*, No. 20-CV-3471, 2020 WL 8260381, at *4 (N.D. Ill. July 20, 2020) (court ordered and later maintained an asset freeze where "Plaintiffs are likely to succeed in showing that the Asset

Restrained Defendants have knowingly sold counterfeit medical devices in violation of the Lanham Act and * * * that each of the Asset Restrained Defendants is likely to attempt to conceal or remove its or his illegal profits if its or his assets are not frozen.") *See also Klipsch Group, Inc. v. Big Box Store Ltd.*, 2012 WL 5265727, at *4 (S.D.N.Y. Oct. 24, 2012) ("Klipsch II") (citing *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 71–72 (2d Cir. 1998)). ("[T]he Court unquestionably has authority to freeze assets to preserve an equitable accounting of profits, a remedy provided to counterfeiting victims by 15 U.S.C. § 1117(a).") *See also, Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.*, 51 F.3d 982 (11th Cir. 1995); *Reebok Int'l Ltd. v. Marnatech Enter.*, 737 F. Supp. 1521, 1525 (S.D. Cal. 1989), aff'd 970 F.2d 552 (9th Cir. 1992); *Federal Savings & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 560-562 (5th Cir. 1987) (district court has inherent power to freeze defendant's assets through issuance of a preliminary injunction when plaintiff is pursuing an equitable remedy).

In determining whether to issue an order restraining a defendant's assets, a plaintiff must show (1) a likelihood of success on the merits; (2) immediate and irreparable harm as a result of defendants' counterfeiting activities; and (3) defendants might hide their illegal ill-gotten funds if their assets were not frozen. *Reebok v. Marnatech*, 737 F. Supp. at 1524, 1527.

As demonstrated herein, Plaintiff will likely succeed on the merits, and is incurring irreparable injury. Defendants have already illustrated a readiness to create counterfeit goods and offer them for sale on several related websites; any funds in Defendants' possession will likely be transferred electronically promptly upon receiving notice of this lawsuit if the Court does not issue an asset freeze order. As a result, any accounting issued by the Court at the end of this case would be meaningless. Accordingly, the grant of an injunction restraining the transfer of Defendants' assets is proper.

## V. PLAINTIFF IS ENTITLED TO EXPEDITED DISCOVERY

District courts have broad power to permit expedited discovery allowing Plaintiffs to take early depositions and to require early document production in appropriate cases. *See* Fed. R. Civ. P. 30(b), 34(b). Expedited discovery requests are routinely granted in trademark infringement cases. *See, e.g., Campaignzeo, Inc. v. Staywoke Inc.*, 2020 WL 7123066 at *2 (expedited discovery granted the information at issue was necessary to support the extent of actual confusion and resulting harm to plaintiff); *Apple Inc. v. Samsung Elecs. Co.*, 768 F. Supp. 2d 1040 (N.D. Cal. 2011). To demonstrate that expedited discovery is necessary, courts consider: "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery sought; (3) the purpose of requesting expedited discovery; (4) the burden on the opposing party to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *Ibarra v. City of Chicago*, 816 F. Supp. 2d 541, 554 (N.D. Ill 2011).

Here, the need for expedited discovery primarily relates to third parties. While Plaintiff will certainly seek discovery from the Defendants if they appear, there is a good chance the Defendants will never appear. Subpoenas to third parties, including PayPal, Shopify, other payment processors, web and email hosting companies connected to Defendants will be necessary to ensure Defendants' activity is fully uncovered and halted. Any delay in discovery will prevent meaningful investigation and relief. Defendants can simply delete their current websites (and sales records) and start new stores at new domains. Plaintiff needs rapid discovery in order to definitively identify the Defendants, their total sales of infringing products, the identity of consumers they have deceived, their payment methods for registering and maintaining websites, and other items. Absent expedited discovery, Plaintiffs will be unable to effectively protect Plaintiff's Jimmy Buffett Marks. Moreover, Plaintiffs may not be able to promptly stop

Defendants' unlawful activities or the unlawful activities of others whose identities have yet to be determined.

Plaintiffs and the consuming public will continue to suffer injury if the full extent of Defendants' counterfeiting scheme is not immediately determined. In contrast, Defendants would fact little *legitimate* hardship from expedited discovery, as they do not have a valid legal interest in keeping their illegal activities hidden.

## VI. CONCLUSION

Based upon the foregoing, Plaintiff respectfully urges this Court to grant an order temporarily restraining Defendants from distributing, selling or offering for sale counterfeit goods, an order to show cause for preliminary injunction, and an order for expedited discovery.

DATED: September 8, 2023

Respectfully submitted,

By: /s/ Cameron M. Nelson
Cameron M. Nelson
Jacqueline Brousseau
Molly Carr
GREENBERG TRAURIG, LLP
77 West Wacker Drive, Suite 3100
Chicago, IL 60601
Telephone: (312) 456-8400

*Counsel for Plaintiff Margaritaville Enterprises, LLC*